IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 123,423

In the Matter of BRENT E. LINDBERG,
*Respondent*.

ORIGINAL PROCEEDING IN DISCIPLINE

Original proceeding in discipline. Opinion filed May 14, 2021. Indefinite suspension.

*Stanton A. Hazlett*, Disciplinary Administrator, argued the cause, and *Matt Franzenburg*, Deputy Disciplinary Administrator, was on the formal complaint for the petitioner.

*Brent E. Lindberg*, respondent, did not appear.

PER CURIAM: This is an original proceeding in discipline filed by the office of the Disciplinary Administrator against the respondent, Brent E. Lindberg, of Wilmington, North Carolina, an attorney admitted to the practice of law in Kansas in 1995.

On March 28, 2019, the Disciplinary Administrator's office filed a formal complaint against the respondent alleging violations of the Kansas Rules of Professional Conduct (KRPC). The respondent failed to file an answer to the formal complaint. On August 29, 2019, a hearing was held on the formal complaint before a panel of the Kansas Board for Discipline of Attorneys where the respondent was personally present without counsel. This hearing was continued before concluding. On October 5, 2020, the hearing panel resumed its hearing on the formal complaint. (This hearing was conducted virtually, *via* the Zoom platform.) Based on its findings, the panel concluded the respondent had violated KRPC 8.4(b) (2020 Kan. S. Ct. R. 394) (professional

1

misconduct); Rule 211(b) (2020 Kan. S. Ct. R. 254) (failing to file an answer to the formal complaint).

More specifically, the panel made the following findings of fact and conclusions of law, together with its recommendation to this court:

"*Findings of Fact*

"10.     The hearing panel finds the following facts, by clear and convincing evidence:

"11.     Brent E. Lindberg (hereinafter 'the respondent') is an attorney at law, Kansas attorney registration number 16987. His last registration address with the clerk of the appellate courts of Kansas is 14520 West 50th Street, Shawnee, Kansas 66216. The respondent no longer resides at that address. The respondent's current address is 320 Rivage Promenade, Wilmington, North Carolina 28412.

"*License History*

"12.     The Kansas Supreme Court admitted the respondent to the practice of law in the State of Kansas on September 29, 1995. The respondent failed to timely pay the annual registration fee in 2018. As a result, he was assessed a late fee. The respondent then paid the annual registration fee, but he did not pay the late fee. As a result, on October 3, 2018, the Kansas Supreme Court issued an order suspending the respondent's license to practice law for failing to pay the late fee. The respondent's license remains under the administrative suspension.

"*Facts Related to Criminal Conviction*

"13.     On March 20, 2018, at approximately 1:30 a.m., a police officer was on patrol in Prairie Village, Kansas, when he made contact with the respondent and R.L. as they were walking down the street. The respondent explained to the officer that they were

2

on a walk because he was stressed out, he was being stalked and harassed, and his life had been threatened.

"14.     R.L. explained to the officer that the respondent had been experiencing hallucinations and hearing voices during the previous few months. R.L. told the officer that earlier in the evening, the respondent jumped from a moving car for no apparent reason. Also earlier in the evening, while laying down, the respondent began yelling that a voice told him that they were going to kill him.

"15.     The respondent agreed to have the police officer transport him to the Shawnee Mission Medical Center. As the police officer patted down the respondent for weapons before transporting him, the police officer felt a small bag inside the respondent's front right pants pocket. The respondent removed a black cloth zipper bag out of his front right pants pocket. The police officer asked the respondent if he could look inside the bag. The respondent agreed. The police officer located four clear plastic bags with a white powdery residue inside, one clear plastic bag with white crystallized substance inside, and a cut clear plastic straw. The police officer asked the respondent what the substance was. The respondent told the police officer that it was 'crystal meth'. The police officer arrested the respondent and transported him to the Prairie Village jail for processing. The police officer seized 2.71 grams of methamphetamine (net weight), the plastic straw, and 4 plastic bags with residue.

"16.     Later that day, the Johnson County District Attorney charged the respondent with possession of methamphetamine, a level 5 drug felony and possession of drug paraphernalia, a class B nonperson misdemeanor, in Johnson County District Court, case number 18CR0757.

"17.     According to the respondent's testimony, his use of methamphetamine was sporadic and situational from October, 2017, through his arrest in March, 2018.

"18.     On March 28, 2018, the respondent entered treatment at Cottonwood Springs in Olathe, Kansas. The respondent successfully completed the treatment on May 2, 2018.

3

"19.    On April 4, 2018, the respondent sent a letter self-reporting the criminal charges to the disciplinary administrator's office.

"20.    On August 29, 2018, the respondent signed a one-year diversion agreement with the Johnson County District Attorney for the two criminal charges. In the diversion agreement the respondent stipulated to the charges and facts contained in the affidavit filed in the criminal case. The diversion agreement was filed on August 31, 2018.

"21.    On October 29, 2018, the disciplinary administrator filed a motion for temporary suspension, based on the respondent's criminal diversion. Thereafter, on November 19, 2018, the Kansas Supreme Court entered an order temporarily suspending the respondent's license to practice law. The respondent's license remains under the temporary suspension.

"22.    On March 28, 2019, Mr. Franzenburg filed a formal complaint in the instant disciplinary case. The respondent failed to file an answer to the formal complaint. At the August 29, 2019, disciplinary hearing, the respondent explained that he did not file an answer to the formal complaint because he thought it would be 'a waste of time' as he had already explained to Mr. Franzenburg that he would not be disputing the facts alleged in the formal complaint.

"23.    On August 28, 2019, a prosecutor with the Johnson County District Attorney's office provided Mr. Franzenburg with a draft copy of a motion to revoke the diversion agreement. In the motion, the prosecutor alleged that the respondent failed to submit to two urinalysis tests, he tested positive for the presence of alcohol on one occasion, he tested positive for amphetamine on four occasions, and he tested positive for methamphetamine on one occasion. The prosecutor filed the motion on August 29, 2019, the same day as the first disciplinary hearing.

4

"24.     Prior to the start of the disciplinary hearing, on August 29, 2019, Mr. Franzenburg provided the respondent with a copy of the draft motion to revoke the diversion.

"25.     At the August, 2019, disciplinary hearing, the respondent disputed the allegations in the motion to revoke the diversion. During his opening statement, the respondent asserted:

> 'I have done everything I can do and know how to do to comply with the terms of my diversion agreement. I will contest those charges. I will say that those two dirty charges that showed up were ones I got in North Carolina. I know that's not the purview today. But I will say, every test I had done in Johnson County turned out fine. When they went to North Carolina, I didn't get any advice on where to go to have testing done. So I went to a place called Any Lab Test Now. They send them out to outside labs. And I will contest that because, like I said, I had no issues with any of the testing done here. It's only been since I moved to North Carolina that I have an issue. So I don't know about the veracity of their testing down there.'

"26.     Later, in response to questions by Ms. Mann, the respondent testified as follows:

> 'Q.     Have you had any discussion with the folks in Johnson County about the testing that you dispute the results of?
>
> 'A.     This was the first I heard of it today.
>
> 'Q.     Okay. So no prior—
>
> 'A.     No. But I did see my PO every month. So I had regular meetings with my PO over the entire last 16 months and those were all successful. So if you see the charges on their [*sic*] that say, amphetamine, those were prescription. And they do have my prescription. And it was acknowledged every time that I was in the office that that was okay because it was prescription. So that, I don't think, is an issue. I think they're writing it all up here to make it look, make the whole thing look worse than it was. Also the two missed appointments on there were also excused with my probation officer at the time. And those were all noted and taken care of at that time. So, again, I think those are added just to make it added for emphasis, so to speak. There are two charges on there that I will dispute from the North Carolina

testing facility. But the rest, like I said, I have met with my probation officer on a monthly basis every month. Never missed an appointment with her. And it was all on the up-and-up. I thought everything was fine until this morning. So that's my first knowledge of it.

'Q.     Have you used any illegal drugs or consumed alcohol since you started the diversion?

'A.     Absolutely not. I've been extremely forthright in terms following the agreement because I want to put all of this behind me. It's been a nightmare. It was horrible. It was humiliating. It was demoralizing. I want it behind me more than any of you can understand. No, I have not. I've never been much of a drinker anyway. But I have missed even things like when my niece got engaged and they had champagne. So things like that I have sacrificed in order to keep my record clean and so I could avoid any further hassle and put it behind me. Apparently that's not happening.'

"27.     At the October 5, 2020, hearing, the respondent contradicted himself regarding his alcohol usage and the allegation that he used alcohol while on diversion:

'MR. LINDBERG: . . . I mean, it was just a matter of I agreed to the revocation, 'um, not because I agreed with each and every line item in it, but the one violation, which I did agree to, I tested positive for alcohol at the very end. And one violation violates the whole thing, so there was no whole point in me arguing any of the other garbage, as I would say, that the prosecution put in there to try to make the case seem worse than it actually was. So, I had no choice but to go ahead and agree to the stipulation.

. . . .

'Q.     [By Mr. Hazlett] Let me ask you this, you tested positive for alcohol on August 2nd of 2019, as I understood your statement before we broke, you agree with that?

'A.     I do, yes. Yes.

'Q.     So, you—around August 2nd of 2019, you were—you were drinking?

'A.     I was with my nephew, I had a couple beers over dinner.

'Q.     But the other tests after July of 2019, you dispute?

'A.     I would have disputed it, but the point was, when I met with my attorney, he said there's no point disputing any of them, because even the alcohol one that you're admitting to is enough. We—we tried to do a stipulated—a partial stipulation, and that wasn't an option. So, my only choice, then, since I agreed that I blew the alcohol one for having beers with my nephew on his birthday, 'um, that was enough to void the whole contract, so there would have been no point in me fighting.

. . . .

'Q.     Okay. And you talked about that you had alcohol while you were on diversion, why did you drink alcohol if you were on diversion, can you—

'A.     Well, it was really stupid. I wasn't even thinking. It was the last month. It was August, it was the last month, and I went out with my nephew, he was celebrating something, I don't remember what it was, I had a couple beers. I really didn't even think about it. 'Um, they called me in the next day, and, yeah, it was stupid. It was very stupid. I had gone 18 months without drinking, then I screwed up at that point.'

"28.     The respondent explained at both hearings that the reason he tested positive for amphetamines on multiple occasions, while on diversion was because he had a prescription for amphetamine. However, his testimony about the prescription is inconsistent. At the August 29, 2019, disciplinary hearing the respondent testified that his prescription was for a cold medicine, Mucinex-D and again denied consuming alcohol while on diversion:

'My allergy medication which is—it's Mucinex-D that's available only from the pharmacist. And that's the prescription that they had on file that caused the amphetamine results, which were cleared every single time by my probation officer because they had that. The only anomalies are the ones that say methamphetamine and alcohol. And the alcohol can come, I know, from mouthwashes, from cologne, things like that. I don't have an explanation for that. If it says it's alcohol, I have to believe it's alcohol. But it wasn't any alcohol that I ingested.'

"29.     At the October 5, 2020, disciplinary hearing, he testified that his prescription was for Adderall, a medication used to treat attention deficit disorder:

7

'Q.     'Um, so, in the motion to revoke, which is Exhibit 5, there were actually four positive tests for amphetamine, are—is it your testimony that you had a prescription, and therefore, even though you tested positive for amphetamines that was okay?

'A.     I didn't have a prescription for methamphetamine, I had a prescription for Adderall. And the whole time I was being tested in the Kansas City area, I met with my probation officer regularly every month to the point that she let me go on just phone meetings. I still went in and met with her in person. She had my prescription for the Adderall. I was on numerous prescriptions, so it wasn't just that.

. . . .

'A.     That's true. The amphetamine ones that came up she would say to me that's okay because you have the prescription for Adderall. I didn't make that up, she's the one that told me that.'

"30.     At the conclusion of the August 29, 2019, hearing on the formal complaint, the hearing panel asked the respondent if he would like to take a drug and alcohol test as part of his evidence in mitigation. He agreed and submitted to a breath alcohol test and a urinalysis drug test. The breath test established that the respondent did not have any alcohol in his system. The urinalysis established that the respondent did not have any illegal drugs in his system.

"31.     In October, 2019, the respondent's step-father passed away. Following the respondent's step-father's death, the respondent relapsed and used illegal drugs.

'Q.     [By Ms. Bonifas] And when was the last time that you used any illegal nonprescription drugs?'

'A.     [By the respondent] It would have been back in, 'um—it would have been probably after—right when my stepfather passed away in October of last year I had a relapse, and that's when I went immediately to Lifeline in Wilmington.'

"32.     The court scheduled a hearing on the motion to revoke the diversion for November 22, 2019. On November 22, 2019, prior to the hearing on the motion to revoke the diversion, at the request of the prosecutor, the respondent submitted to a urinalysis test.

"33.    During the hearing on the motion to revoke the diversion agreement, the respondent attempted to make a partial stipulation that he violated his diversion. The prosecutor insisted that the respondent stipulate to all the allegations in the motion. As a result, the respondent stipulated to all the allegations in the motion to revoke the diversion agreement. Specifically, the respondent stipulated that he failed to submit to two urinalysis tests, he tested positive for the presence of alcohol on one occasion, he tested positive for amphetamine on four occasions, and he tested positive for methamphetamine on one occasion. The court granted the motion to revoke the diversion.

"34.    After the respondent stipulated to violating the diversion, the prosecutor noted on the record that the respondent tested positive for 'amphetamines and benzos' that day. In response to the court's questions, Y.B., a diversion supervisor, informed the court that the respondent has a prescription for an amphetamine and for Xanax which would appear on a drug test as a 'benzo.' Y.B. did not provide identify the drug for which the respondent had a prescription which would cause the positive test for amphetamine.

"35.    Following the respondent's relapse in October, 2019, the respondent entered drug treatment at Lifeline. On November 29, 2018 [*sic*], he successfully completed the treatment.

"36.    On January 21, 2020, the prosecutor filed a document in the respondent's criminal case, titled Stipulated Facts for the Defendant's Court Trial.

"37.    On July 8, 2020, the district court held a court trial on stipulated facts. The court found the respondent guilty of possession of methamphetamine, a level 5 drug felony and possession of drug paraphernalia, a class B nonperson misdemeanor. The court scheduled sentencing for August 27, 2020.

"38.    On August 27, 2020, the district court sentenced the respondent to six months in jail, but granted the respondent's request for probation. The court ordered the respondent to serve 12 months of probation. The court indicated that if the respondent

9

complied with the terms and conditions of probation, he could apply for early termination of probation after six months.

"39.    The probation order clearly prohibits the respondent from possessing or consuming alcohol or cereal malt beverages. During the October 5, 2020, disciplinary hearing, the respondent stated that he consumes beer from time to time.

'Q.    [By Ms. Bonifas] Okay. As you sit here today, when was the last time that you used alcohol?

'A.    [By the respondent] 'Um, I—I have used alcohol recently. 'Um, but I don't drink to get drunk. I've had—I've had a beer in passing with my friends at the clubhouse. I live at a golf resort, so I've had a beer when I go up to the clubhouse with them. I don't think I'm under anything right now that says I'm not supposed to have alcohol. No one has told me that, so, yeah, I'll have a beer or two here, but I don't drink to get intoxicated.'

"40.    Mr. Chubb pointed out that the probation order prohibits the respondent from consuming alcohol, as follows:

'Q.    Mr. Lindberg, I was looking at Exhibits 12 and 13. 12 is a sentencing journal entry, if you can call it a journal entry. It's a fill-in-the-blank form signed by the judge. It shows a six-month sentence on each count and 12 months' probation. Is that consistent with your memory?

'A.    Uh-huh.

'Q.    Okay. And then Exhibit 13, Paragraph 7 is condition of probation, and it does state in there, Paragraph 7, "Defendant shall not possess or consume alcohol or cereal malt beverages." Just FYI. That's—are you being supervised courtesy supervision in North Carolina?

'A.    They transferred it to North Carolina, and the woman that has my case in North Carolina, I asked her if I'm allowed to drink, and she said she didn't know at that point, but she would figure it out.'

"41.    Based upon the findings of fact, the hearing panel concludes as a matter of law that the respondent violated KRPC 8.4(b) (professional misconduct) and Rule 211 (failure to file answer), as detailed below.

"KRPC 8.4(b)

"42.    'It is professional misconduct for a lawyer to . . . commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects.' KRPC 8.4(b). In this case, the respondent was convicted of a felony for possessing methamphetamine and a misdemeanor for possessing drug paraphernalia. Felony possession of methamphetamine and misdemeanor possession of drug paraphernalia are crimes which adversely reflect on the respondent's fitness as a lawyer. Accordingly, the hearing panel concludes that the respondent violated KRPC 8.4(b).

"Kan. Sup. Ct. R. 211(b)

"43.    The respondent did not file an answer to the formal complaint. He explained that he did not think that it was necessary as he previously told the deputy disciplinary administrator that he did not intend to dispute the facts in the formal complaint. The Kansas Supreme Court Rules, however, require a respondent to file an answer to a formal complaint:

> 'The respondent shall serve an answer upon the Disciplinary Administrator within twenty days after the service of the complaint unless such time is extended by the Disciplinary Administrator or the hearing panel.'

Kan. Sup. Ct. R. 211(b). The respondent violated Kan. Sup. Ct. R. 211(b) by failing to file an answer to the formal complaint. Accordingly, the hearing panel concludes that the respondent violated Kan. Sup. Ct. R. 211(b).

11

"44. In making this recommendation for discipline, the hearing panel considered the factors outlined by the American Bar Association in its Standards for Imposing Lawyer Sanctions (hereinafter 'Standards' ). Pursuant to Standard 3, the factors to be considered are the duty violated, the lawyer's mental state, the potential or actual injury caused by the lawyer's misconduct, and the existence of aggravating or mitigating factors.

"45. *Duty Violated*. By engaging in criminal conduct, including felonious conduct, the respondent violated his duty to the public to maintain his personal integrity.

"46. *Mental State*. The respondent knowingly violated his duty.

"47. *Injury*. As a result of the respondent's misconduct, the respondent caused injury to the legal profession.

"Aggravating and Mitigating Factors

"48. Aggravating circumstances are any considerations or factors that may justify an increase in the degree of discipline to be imposed. In reaching its recommendation for discipline, the hearing panel, in this case, found the following aggravating factors present:

a. *Substantial Experience in the Practice of Law*. The Kansas Supreme Court admitted the respondent to the practice of law in the State of Kansas in 1995. At the time of the misconduct, the respondent had been practicing law for more than twenty years.

b. *Submission of False Evidence, False Statements, or Other Deceptive Practices During the Disciplinary Process*.

12

i.      As described in ¶¶ 25-29 above, the respondent provided conflicting testimony. Specifically, the respondent testified on August 29, 2019, that he had not consumed alcohol and had not violated the terms of his diversion. But, at the November 22, 2019, hearing on the motion to revoke the diversion again at the October 5, 2020, disciplinary hearing, the respondent stipulated that he violated his diversion by consuming alcohol on August 2, 2019. The hearing panel is troubled by the conflict in this evidence, especially because the respondent's false testimony came less than a month after the event in question. The hearing panel concludes that the respondent intended to deceive the hearing panel with this testimony.

ii.      The respondent also testified, at the August 29, 2019, hearing, that his prescription for an amphetamine was the cold medicine, Mucinex-D; but at the October 5, 2020, hearing the respondent testified that his prescription for an amphetamine was Adderall. The hearing panel notes the differences in the testimony, but does not foreclose the possibility that the respondent had prescriptions for both Mucinex-D and Adderall. However, from the record it appears that the respondent provided conflicting testimony.

iii.      Finally, at the October 5, 2020, hearing, the respondent characterized the reason for the November, 2019, treatment differently. First, during the preliminary matters, the respondent described the November, 2019, treatment as: 'another one I did here in Wilmington after I moved here just to refresh everything, and I just thought it would be a good thing.' Later, the respondent testified that he went into treatment in response to his relapse following his step-father's death. While the hearing panel agrees that it was a good thing that respondent sought treatment, the respondent's statement mischaracterized the impetus for the treatment.

13

iv.    The hearing panel concludes that the respondent submitted false evidence intended to describe when he testified that he had not consumed alcohol in violation of his diversion at the August 29, 2019, hearing. The hearing panel further concludes that the respondent provided conflicting statements and testimony regarding his prescriptions for amphetamine and his November, 2019, treatment, which further calls the respondent's honesty into question.

c.    *Illegal Conduct, Including that Involving the Use of Controlled Substances*. The basis of this disciplinary case is the respondent's illegal conduct in possessing methamphetamine and drug paraphernalia. More recently, the respondent testified that after being placed on felony probation by the Johnson County District Court, he has consumed alcohol. When the prohibition of consuming alcohol in the probation order, was brought to his attention, the respondent seemed unaware that abstinence from alcohol was required by the probation order.

"49.    Mitigating circumstances are any considerations or factors that may justify a reduction in the degree of discipline to be imposed. In reaching its recommendation for discipline, the hearing panel, in this case, found the following mitigating circumstances present:

a.    *Absence of a Prior Disciplinary Record*. The respondent has not previously been disciplined.

b.    *Personal or Emotional Problems if Such Misfortunes Have Contributed to Violation of the Kansas Rules of Professional Conduct*. The respondent suffers from depression, anxiety, panic attacks, and drug abuse. The respondent sought and obtained mental health and substance abuse treatment.

i.    Specifically, on March 28, 2018, the respondent entered partial hospital programming drug treatment at Cottonwood Springs. On April

14

16, 2018, he transferred to intensive outpatient treatment. On May 2, 2018, he completed the treatment program.

ii. After he completed that treatment, the respondent participated in Smart Recovery, a recovery program based on behavioral modification. The respondent also participated in therapy and continues to take medication for his mental health conditions.

iii. In March, 2019, the respondent returned to Cottonwood Springs for additional mental health treatment. The respondent testified at the first hearing that he had remained physically active to assist with his recovery.

iv. After his step-father died, in October, 2019, the respondent relapsed and used illegal drugs. In November, 2019, the respondent entered and successfully completed drug treatment at Lifeline in Wilmington, North Carolina.

v. Presently, the respondent remains under the care of a psychiatrist and a therapist and the respondent attends NA and AA meetings.

c. *The Present and Past Attitude of the Attorney as Shown by His or Her Cooperation During the Hearing and His or Her Full and Free Acknowledgment of the Transgressions.* While the respondent did not file an answer as required by the rules, during the hearing, the respondent admitted the facts that support the conclusions that he violated the rules and the respondent took responsibility for possessing methamphetamine and drug paraphernalia.

d. *Previous Good Character and Reputation in the Community Including Any Letters from Clients, Friends and Lawyers in Support of the Character and General Reputation of the Attorney*. The respondent submitted two letters from colleagues which establish that he was previously a respected member of the Kansas bar.

15

e.     *Imposition of Other Penalties or Sanctions*. The respondent experienced other sanctions for his conduct. The respondent was arrested for the violations, he entered a diversion agreement, and, after failing to comply with the diversion agreement, he was convicted of the crimes. Finally, the respondent is currently on felony probation.

"50.     In addition to the above-cited factors, the hearing panel has thoroughly examined and considered the following Standards:

'5.12     Suspension is generally appropriate when a lawyer knowingly engages in criminal conduct which does not contain the elements listed in Standard 5.11 and that seriously adversely reflects on the lawyer's fitness to practice.'

*"Recommendations of the Office of the Disciplinary Administrator*

"51.     At the first hearing, the deputy disciplinary administrator recommended that the respondent's license be suspended for a period of 18 months, that the suspension be retroactive to the date of the temporary suspension, and that the respondent be required to undergo a reinstatement hearing under Rule 219.  However, the deputy disciplinary administrator's recommendation based on the assumption that the respondent did not violate the diversion agreement.

"52.     At the conclusion of the October 5, 2020, disciplinary hearing, the disciplinary administrator made alternative recommendations. The disciplinary administrator recommended that the respondent's license be indefinitely suspended. Alternatively, the disciplinary administrator argued that if the hearing panel concluded that the respondent had been dishonest in the disciplinary proceedings, the disciplinary administrator recommended that the respondent be disbarred. Further, the disciplinary administrator recommended that the discipline not be made retroactive to the date of the temporary suspension. The disciplinary administrator pointed out that a reinstatement

16

hearing, under Rule 219, is required when an indefinite suspension or disbarment is imposed. The disciplinary administrator argued that it is important that the respondent undergo a Rule 219 reinstatement hearing prior to consideration of reinstatement.

*"Recommendation of the Respondent*

"53.     At the conclusion of the first hearing, the respondent recommended that he receive a verbal warning for the violations of the rules. The respondent, however, also agreed that an 18 month suspension, retroactive to the date of temporary suspension was a reasonable outcome.

"54.     The respondent did not make a recommendation for discipline at the conclusion of the October 5, 2020, disciplinary hearing. During his closing argument, the respondent asserted that he had been honest throughout the disciplinary proceedings and throughout the district court case. He argued that during the hearing on the motion to revoke the diversion agreement, he simply followed his lawyer's advice.

*"Recommendation of the Hearing Panel*

"55.     Based upon the findings of fact, conclusions of law, and the Standards listed above, the hearing panel unanimously recommends that the respondent be suspended for a period of two years. The hearing panel further recommends that prior to reinstatement, the respondent be required to undergo a hearing pursuant to Kan. Sup. Ct. R. 219. Finally, the hearing panel recommends that the suspension be effective the date the Supreme Court releases its opinion and not retroactive to the date of the temporary suspension order entered in this case.

"56.     The hearing panel's recommendation is based on the hearing panel's position that the respondent should be required to establish that he has been drug-free for at least three years before he is eligible to apply for reinstatement of his license to practice law. At the reinstatement hearing, the hearing panel recommends that the respondent establish that:

17

a.	he has not used illegal drugs for at least three years;

b.	he successfully completed his criminal probation, including refraining from using alcohol;

c.	he has complied with all alcohol and drug treatment recommendations through testimony from his treatment professionals;

d.	he has not violated the law; and

e.	he has paid the fees, completed the continuing legal education hours, and complied with all requirements to satisfy the administrative requirements for the reinstatement of his law license.

"57.	Costs are assessed against the respondent in an amount to be certified by the Office of the Disciplinary Administrator."

## DISCUSSION

In a disciplinary proceeding, this court considers the evidence, fact-findings of the hearing panel, recommendations of the panel, and the arguments of the parties. We then determine whether violations of KRPC exist and, if they do, what discipline should be imposed. Attorney misconduct must be established by clear and convincing evidence. *In re Foster*, 292 Kan. 940, 945, 258 P.3d 375 (2011); see Supreme Court Rule 211(f) (2020 Kan. S. Ct. R. 254). "Clear and convincing evidence is 'evidence that causes the factfinder to believe that "the truth of the facts asserted is highly probable."'" *In re Lober*, 288 Kan. 498, 505, 204 P.3d 610 (2009) (quoting *In re Dennis*, 286 Kan. 708, 725, 188 P.3d 1 [2008]).

18

The respondent was given adequate notice of the formal complaint, but he did not file a response. The respondent was also given adequate notice of the hearings before the panel. He was provided a copy of the panel's final hearing report, and the respondent did not file exceptions to that report. Consequently, the panel's final hearing report is deemed admitted by respondent in its entirety. Supreme Court Rule 212(c), (d) (2020 Kan. S. Ct. R. 258). The evidence supports the panel's conclusions of law. We therefore adopt the panel's findings and conclusions.

Respondent was ordered to appear before this court and was provided notice to appear for that hearing. Nonetheless, the respondent did not appear before this court for his hearing. His failure to appear constitutes an additional violation. Supreme Court Rule 212(e)(5).

The only remaining issue before us is the appropriate discipline for the respondent's violations.

As referenced above, the Disciplinary Administrator made alternative recommendations after the final hearing before the panel. At that time, the Disciplinary Administrator recommended that the respondent's license be indefinitely suspended. Alternatively, the Disciplinary Administrator argued that if the hearing panel concluded that the respondent had been dishonest in the disciplinary proceedings, the respondent be disbarred. In the end, the respondent had no recommendation.

The panel unanimously recommended that the respondent's license to practice law be suspended for a period of two years. It further recommended that the respondent be required to undergo a hearing pursuant to Supreme Court Rule 219 (2020 Kan. S. Ct. R. 266) before reinstatement would be considered. Finally, the hearing panel recommended

that the suspension be effective on the date the Supreme Court releases its opinion and not retroactive to the date of the temporary suspension order entered in this case.

After the hearing before this court, based primarily on the fact that the respondent did not appear, the Disciplinary Administrator revised his recommendation. He recommended that the respondent be disbarred unless he had a good excuse for his failure to appear. If there was a good excuse, the Disciplinary Administrator recommends this court follow the panel's recommendations.

This court is not bound by the recommendations made by the Disciplinary Administrator or the hearing panel. Supreme Court Rule 212(f). We are aware of the devastating consequences of drug dependence and the toll it can take on the lives of people like Lindberg. However, we cannot overlook the serious nature of the misconduct underlying the findings in this case and respondent's failure to appear for his hearing before this court. We conclude an appropriate discipline is indefinite suspension of respondent's license to practice law. Respondent is required to comply with Supreme Court Rule 218 (2020 Kan. S. Ct. R. 265) and also undergo a reinstatement hearing pursuant to Supreme Court Rule 219 should he wish to pursue license reinstatement.

CONCLUSION AND DISCIPLINE

IT IS THEREFORE ORDERED that Brent E. Lindberg be and he is hereby disciplined by indefinite suspension in accordance with Supreme Court Rule 203(a)(2) (2020 Kan. S. Ct. R. 234) effective on the filing of this opinion.

IT IS FURTHER ORDERED that the respondent comply with Supreme Court Rule 218 (2020 Kan. S. Ct. R. 265).

IT IS FURTHER ORDERED that if the respondent applies for reinstatement, he shall comply with Supreme Court Rule 219 (2020 Kan. S. Ct. R. 266) and be required to undergo a reinstatement hearing.

IT IS FURTHER ORDERED that the costs of these proceedings be assessed to the respondent and that this opinion be published in the official Kansas Reports.